Rockingham,
No. 5490.

LAWRENCE E. ROBBINS *v.* PERINI CORPORATION *& a.*

Argued June 7, 1966.
Decided June 30, 1966.

*Robert A. Shaines* and *Fred J. Madrigan* (*Mr. Madrigan* orally), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *Luke S. O'Neill, Jr.* (*Mr. O'Neill* orally), for the defendants.

DUNCAN, J. On September 26, 1961 the plaintiff was employed by the defendant in constructing forms for cement, in the construction of the Hopkinton dam. He was working upon one of the forms at a height of approximately thirty feet when it commenced to "tip out" and he "jumped to avoid getting killed," landing upon his feet on rock and fill below. He was thereafter taken to a doctor, returned to work, was sent home, and remained there for the following day. He then returned to work, continuing in the defendant's employ at the dam as a carpenter "on ground work" until December 1, 1961. Thereafter he was employed by the defendant at Portsmouth until February 25, 1962. During this period his pay equaled or exceeded the pay which he had received before the accident. Following termination of his employment

with the defendant, he declined other employment which involved climbing, but did some " ground work " as a carpenter for Whitcomb Construction Co., and for a period of some seven weeks drew unemployment compensation. In May 1962, he attended a course preparatory to opening a filling station with his son, and from June 1962 to the date of trial, his compensation in the filling station averaged $50 for a forty-hour week, as compared with $100 or better for a forty-hour week in construction work for the defendant.

The medical testimony was summarized in the findings and rulings of the Trial Court as follows: " Ever since the fall of September 26, 1961, he has complained of pain and discomfort in his feet and ankles and has received medical attention from Dr. Robbins and Dr. Hunter; claims ankles and feet feel like a ' toothache '; never had that trouble before the fall in September of 1961. He states his toes seem to ache and arches get tired and he is unable to go back to his work as a carpenter.

" Dr. Robbins testified as to complaints made by Petitioner and treatment he ordered. His medical opinion was that Petitioner in the fall sustained in September, 1961, suffered severe multiple ligament strains in his feet and also minute microscopic hemorrhagic bleeding under the fibrous lining of bones, a condition referred to as ' shin splits. ' In March, 1962, his arches began to flatten out and later Petitioner developed a condition in his feet designated as ' clawing of the toes. ' Dr. Robbins gave his opinion that the flattening of the arches and the clawing of the toes would continue and would be a disabling, permanent condition. He testified that the clawing of the toes was brought about by the flattening of the arches and that this final condition of flat arches and the clawing of the toes was directly associated with the fall sustained by the Petitioner in 1961. . . .

" The defense produced Dr. John F. Macek, a qualified orthopedic surgeon. Dr. Macek examined the Petitioner in 1962. He found no serious malfunction of the feet or ankles; did not note any unusual manifestations in feet or ankles. He stated unequivocally that clawing of the toes is an hereditary disability. A person is inherently born with it and falling on feet alone will not cause it. He further testified that any flattening of the arches would be brought about by the clawing of the toes, rather than the flattening would cause the clawing. His medical opinion was to the effect that on the date of his examination [ November 27, 1962 ] the Petitioner manifested no impression of any orthopedic

disability then present and no manifestation of any permanent disability resulting from his fall in 1961. Dr. Macek further stated there was no expectancy of any causal disability in the future and that Petitioner can perform his duties as a carpenter."

The findings and rulings of the Court concluded as follows: "The Court accepts the opinion of Dr. Macek and rules that the disability claimed by the Petitioner, together with any diminution in earning capacity, is in no way associated with the fall sustained by him on September 26, 1961, and did not arise out of or in the course of his employment on that date. Compensation is denied."

The plaintiff argues that the Trial Court erred by basing its decision "on the medical evidence alone rather than on a consideration of all the other factors" (*Armstrong* v. *Lake Tarleton Hotel*, 103 N. H. 450, 453; *Glass* v. *Edens*, 233 Ark. 786); and erroneously ignored the plaintiff's uncontradicted evidence that his "injury on the job . . . resulted in his inability to perform the type of work in the heavy construction industry . . . for which he was qualified."

The plaintiff correctly points out that degree of physical disability is not the measure by which to determine the compensation to be awarded for a compensable injury. *Kacavisti* v. *Sprague Electric Co.*, 102 N. H. 266, 270; *Gagne* v. *Company*, 87 N. H. 163, 166. It is settled law that loss of earning capacity is the measure. *Desrosiers* v. *Company*, 98 N. H. 424; *Joyce* v. *Chicopee Mfg. Co.*, 103 N. H. 471; *Dunbar Fuel Co.* v. *Cassidy*, 100 N. H. 397, 403. The Court recognized this principle by granting the plaintiff's eighteenth request.

The decision in this case however did not turn upon the measure of compensation, but upon the question of whether the plaintiff suffered a loss of earning capacity due to injury caused by the accident. The Court concluded that he did not, and in this we find no error of law.

As plaintiff's counsel points out, the defendants' expert recognized that the plaintiff "sustained injury to both ankles as a result of a fall or jump." However on examination some fourteen months after the accident he found that there was no disability "as a result of the accident" then existing. The plaintiff's attending physician, Dr. Robbins, testified that by late 1961 the swelling of the ankles was gone and movements of the joints were normal. On November 27, 1961 he found the plaintiff to be "almost completely okay." According to his testimony the

trouble with fallen arches and clawing of the toes became evident in March 1962.

Before attempting to measure loss of earning capacity, the Court properly undertook to determine whether any such loss was due to accidental injury. RSA 281:2 III ( supp ). It was on this issue that the opinions of the experts differed. The Court, as it might properly do, accepted the opinion of Dr. Macek that the arch trouble and clawing of the toes were not due to the accident. It follows that there was no occasion to measure any loss of earning capacity resulting from this cause, which had first appeared in March 1962. *Dustin* v. *Lewis*, 99 N. H. 404. See *Blecatsis* v. *Manchester Gas Co.*, 103 N. H. 542, 543. The record established no loss of earning capacity as a result of the swollen ankles and loss of motion from which the plaintiff suffered until late in 1961. Hence the Trial Court correctly ruled that the plaintiff was not entitled to compensation.

*Judgment for the defendants.*

All concurred.